IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| BRANDON L. JENKINS, | ) |
| Petitioner, | ) ) ) |
| v. | )  Case No. 22-CV-0036-GKF-JFJ ) |
| CARRIE BRIDGES,[1] | ) ) |
| Respondent. | ) |

## OPINION AND ORDER

Petitioner Brandon Jenkins, a self-represented Oklahoma prisoner,[2] seeks federal habeas relief, under 28 U.S.C. § 2254, asserting he is in state custody in violation of federal law pursuant to the criminal judgment entered against him in Tulsa County District Court Case No. CF-2018-4136. He claims he was deprived of Fourteenth Amendment right to due process because (1) the State of Oklahoma did not present sufficient evidence at trial to prove, beyond a reasonable doubt, that he committed a firearm offense and a drug trafficking offense; and (2) the State did not have jurisdiction to prosecute him for crimes he committed in Indian country. Having considered Jenkins's Petition for Writ of Habeas Corpus (Dkt. 1), Respondent's Response in Opposition to the Petition (Dkt. 6), Jenkins's Reply (Dkt. 11), the record of state court proceedings (Dkts. 6, 7,

---

[1] Jenkins presently in incarcerated at the James Crabtree Correctional Center ("JCCC"). The Court therefore substitutes the JCCC's current warden, Carrie Bridges, in place of the JCCC's former warden, Scott Nunn, as party respondent. Fed. R. Civ. P. 25(d); Rule 2(a), *Rules Governing Section 2254 Cases in the United States District Courts*. The Clerk of Court shall note on the record this substitution.

[2] Because Jenkins appears without counsel, the Court liberally construes the Petition and Reply. *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991). But the rule of liberal construction neither requires nor permits the Court to act as an advocate for Jenkins by constructing legal arguments or scouring the record for facts that might support his claims. *Garrett v. Selby Connor Maddux & Janer*, 425 F.3d 836, 840 (10th Cir. 2005).

8), and applicable law, the Court finds and concludes that this matter can be resolved without an evidentiary hearing and that the Petition shall be denied.

## BACKGROUND

On September 8, 2018, Tulsa Police Officer Will Mortensen was driving his patrol car northbound on Hartford Avenue, approaching East Apache Street, when he saw a red Chevy Blazer signaling a left turn. Dkt. 7-9, at 101, 109. Officer Mortensen saw the driver of the Blazer, later identified as Jenkins, commit two traffic violations: a belated use of his turn signal and an incomplete stop at a stop sign. *Id.* at 109-10. Jenkins turned left onto East Apache Street, then immediately turned left again, heading south on North Garrison Place. *Id.* at 110, 118. Officer Mortensen, who was driving a marked patrol car, activated the patrol car's light bar as he turned left onto North Garrison Place, following Jenkins. *Id.* at 110-11, 118. Jenkins kept driving. *Id.* at 111, 157. Officer Mortensen then activated the patrol car's siren; still, Jenkins kept going. *Id.* at 111. As he followed Jenkins, Officer Mortensen saw that two objects were thrown out of the passenger side window of the Blazer. *Id.* at 112-13. After a brief, low-speed pursuit, Jenkins stopped the Blazer on North Garrison Place, "approximately two to three blocks south of where the items were thrown out." *Id.* at 113, 156, 161; *see also* Dkt. 8 (Def. Exhs. 1, 2 (dash camera and body camera videos)). Officer Mortensen approached the Blazer, saw that the passenger window was down, saw that the driver's window was up, and spoke with Jenkins, "the driver and only occupant of the vehicle." Dkt. 7-9, at 114. Jenkins admitted that did not have a driver's license, so Officer Mortensen arrested him for driving without a license. *Id.* at 116, 122. During the search incident to Jenkins's arrest, Officer Mortensen recovered $105 from the front pocket of Jenkins's pants, but he found no money in Jenkins's wallet. *Id.* at 136, 153-54.

As other officers arrived at the scene of the traffic stop, Officer Mortensen asked Officer

Paul Spicer to search "the area from East Apache to the location of the traffic stop" to locate and recover the items that Officer Mortensen saw Jenkins throw out the passenger side window. Dkt. 7-9, at 121-22, 125, 163, 174-79. Officer Mortensen searched the Blazer and found no guns, drugs, or drug paraphernalia. *Id.* at 122-24, 152-53. Officer Spicer, however, found two items on the ground, about one block apart from each other, on the west side of North Garrison Place: a nine-millimeter pistol and a baggie containing drugs. *Id.* at 125-31, 179-82, 187-94.

The State filed an amended felony information in January 2019, charging Jenkins with multiple felonies and misdemeanors and alleging he committed them after former conviction of six felonies. Dkt. 7-13, at 86-88. Jenkins's case proceeded to a jury trial in September 2019. Dkt. 7-8, at 1. Ultimately, the jury found Jenkins guilty of trafficking in illegal drugs (methamphetamine) (count one); possession of a controlled dangerous substance (cocaine) (count two);[3] acquiring proceeds from drug activity (count four); possession of a firearm while in the commission of a felony (count six); eluding a police officer (count eight); and obstructing a police officer (count nine).[4] Dkt. 7-14, at 82-88. The jury also found that Jenkins committed the felony offenses after former conviction of two or more felonies. *Id.* at 89-92. At sentencing, the trial court dismissed the drug-related convictions in counts two and four, finding that they merged with

---

[3] The original charge in count two was possession of cocaine with intent to distribute, but the jury found him not guilty of possession with intent to distribute and guilty of the alternative charge of simple possession. Dkt. 7-13, at 86; Dkt. 7-14, at 83.

[4] The jury found Jenkins not guilty of committing a gang-related offense, as charged in count seven. Dkt. 7-14, at 86. After the jury returned a verdict of guilt as to the firearm offense charged in count six, the trial court granted the State's motion to dismiss count five which charged Jenkins with possession of a firearm after former conviction of a felony. Dkt. 7-10, at 76-77. The trial court also dismissed the remaining charges (counts three, ten, eleven, and twelve) at the State's request. Dkt. 7-13, at 5; *see also* Docket Sheet, *State v. Jenkins*, https://www.oscn.net/dockets/GetCaseInformation.aspx?db=tulsa&number=CF-2018-4136&cmid=3187798 (last viewed, Dec. 3, 2024).

the drug trafficking conviction in count one. Dkt. 7-12, at 18-19. As to the remaining convictions, the trial court sentenced Jenkins according to the jury's recommendations: twelve years' imprisonment (count one); twenty years' imprisonment (count six); six months in jail (count eight); and one year in jail (count nine). *Id.* at 18-22; Dkt. 7-10, at 73.[5] The trial court ordered the first two sentences to be served consecutively to each other and ordered the last two sentences to be served concurrently with each other and concurrently with the sentence in count one. Dkt. 7-12, at 18-22.

Jenkins filed a direct appeal in the Oklahoma Court of Criminal Appeals ("OCCA"), claiming the State violated his Fourteenth Amendment right to due process by failing to present sufficient evidence to support his firearm and drug trafficking convictions. Dkt. 6-1. The OCCA rejected both claims and affirmed Jenkins's convictions and sentences in December 2020. Dkt. 6-3. Jenkins also filed two applications for postconviction relief. In the first application, filed in August 2020 while his direct appeal was pending, Jenkins relied on *McGirt v. Oklahoma*, 591 U.S. 894 (2020), to assert that the State lacked jurisdiction to prosecute him for crimes he committed within the boundaries of the Muscogee (Creek) Nation Reservation because the Muscogee (Creek) Nation had no "cross-deputization agreement with Tulsa County, Oklahoma." Dkt. 6-4. The state district court denied relief, reasoning, in part, that Jenkins presented no evidence that he is Indian. Dkt. 6-5. Nearly two weeks later, Jenkins filed a "motion to dismiss," raising a different Indian country jurisdiction claim. Dkt. 6-6. In this motion, Jenkins relied on the Treaty of Washington, 14 Stat. 799 (1866), to assert that he could only be prosecuted by the Cherokee Nation. Dkt. 6-6. In support of this claim, Jenkins conceded that he is "not an Indian within the meaning of federal

---

[5] After hearing oral arguments, the trial court dismissed the drug-related convictions in counts two and four, finding that they merged with the drug trafficking conviction in count one. Dkt. 7-12, at 18-19.

law." *Id.* at 4. The state district court construed the motion as a second application for postconviction relief and denied relief, reasoning (again) that Jenkins's non-Indian status precluded relief. Dkt. 6-8. Jenkins filed a postconviction appeal, and the OCCA affirmed the denial of postconviction relief. Dkts. 6-9, 6-10. Like the state district court, the OCCA reasoned that Jenkins cited no controlling authority to show that the State lacks jurisdiction to prosecute crimes committed in Indian country when there is no evidence that either the defendant or a victim is Indian. Dkt. 6-10, at 2-3.[6]

Jenkins now seeks federal habeas relief, reasserting the Fourteenth Amendment claims he presented to the OCCA on direct appeal, challenging the sufficiency of the evidence to support two of his convictions, and the Fourteenth Amendment claim he presented to the OCCA on postconviction appeal, challenging the State's exercise of criminal jurisdiction in Indian country. Dkt. 1. Respondent urges the Court to deny the Petition, arguing that 28 U.S.C. § 2254(d) bars relief because the OCCA reasonably applied federal law and reasonably determined the facts when it rejected Jenkins's claims. Dkt. 6.

## DISCUSSION

A federal court has discretion to issue a writ of habeas corpus to a state prisoner who demonstrates that he is "in custody in violation of the Constitution or laws or treaties of the United States." 28 U.S.C. § 2254(a). But the Antiterrorism and Death Penalty Act of 1996 ("AEDPA")

---

[6] After the OCCA affirmed the denial of postconviction relief, Jenkins filed a petition for writ of certiorari in the Supreme Court of the United States, and the Supreme Court denied the petition. Dkts. 6-11, 6-12.

5

and federal habeas jurisprudence limit that discretion in several ways.[7] Relevant here, when a state court has adjudicated a federal claim on the merits, a federal court "shall not" grant habeas relief unless the prisoner first shows that the state court's adjudication of that claim either "resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States," 28 U.S.C. § 2254(d)(1),[8] or "resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding," *id.* § 2254(d)(2).[9] The prisoner "carries the burden of proof" in satisfying these standards. *Cullen v. Pinholster*, 563 U.S. 170, 181 (2011). This burden is demanding; it requires the prisoner to "show[] there was no reasonable basis for the state court to deny relief." *Harrington v. Richter*, 562 U.S. 86, 98 (2011); *see also Meek v. Martin*, 74 F.4th 1223, 1248 (10th Cir. 2023) (noting that to satisfy § 2254(d)'s demanding standards, "[t]he prisoner must show that a state court's decision is 'so obviously wrong' that no reasonable judge could arrive at the same conclusion given the facts of the prisoner's case" (quoting *Shinn v. Kayer*, 592 U.S. 111, 118 (2020) (*per curiam*))).

Moreover, even if a prisoner satisfies § 2254(d)'s preconditions to relief, a federal court

---

[7] The AEDPA imposes a one-year statute of limitations and requires a state prisoner to exhaust available state remedies before seeking federal habeas relief. 28 U.S.C. §§ 2244(d)(1), 2254(b)(1)(A). Respondent concedes that Jenkins timely filed the Petition and that he exhausted available state remedies as to each of his claims. Dkt. 6, at 3.

[8] The phrase "clearly established Federal law," as used in § 2254(d)(1), "refers to the holdings, as opposed to the dicta, of [the Supreme] Court's decisions as of the time of the relevant state-court decision." *Bonney v. Wilson*, 754 F.3d 872, 880 (10th Cir. 2014) (alteration in original) (citation and internal quotation marks omitted).

[9] Respondent asserts, and the Court finds, that the OCCA denied Jenkins's constitutional claims on the merits. Dkt. 6, at 8 & n.2; *see* Dkts. 6-3, 6-10, at 2. Jenkins appears to acknowledge this point in by arguing in his Reply that the OCCA's decision is unreasonable under § 2254(d). Dkt. 11.

need not grant habeas relief. *See Brown v. Davenport*, 596 U.S. 118, 134 (2022) ("While AEDPA announced certain new conditions to relief, it did not guarantee relief upon their satisfaction."); *Horn v. Banks*, 536 U.S. 266, 272 (2002) ("While it is of course a necessary prerequisite to federal habeas relief that a prisoner satisfy the AEDPA standard of review set forth in 28 U.S.C. § 2254(d) . . . none of our post-AEDPA cases have suggested that a writ of habeas corpus should automatically issue if a prisoner satisfies the AEDPA standard."). Rather, the prisoner "must still . . . persuade a federal habeas court that 'law and justice require' relief." *Davenport*, 596 U.S. at 134 (quoting 28 U.S.C. § 2243).

As discussed next, Jenkins has shown that he can satisfy § 2254(d)'s demanding preconditions to habeas relief, must less shown that law and justice require relief.

**I.    Claims one and two:  insufficient evidence**

Jenkins claims, as he did on direct appeal, that he was deprived of his Fourteenth Amendment right to due process because the State did not present sufficient evidence at trial to prove, beyond a reasonable doubt, that he is guilty of possessing a firearm in the commission of a felony and trafficking in illegal drugs. Dkt. 1, at 5, 7; Dkt. 6-1; Dkt. 11.

The Fourteenth Amendment's due process clause "protects the accused against conviction except upon proof beyond a reasonable doubt of every fact necessary to constitute the crime with which he is charged." *In re Winship*, 397 U.S. 358, 364 (1970). When reviewing the sufficiency of the evidence supporting a criminal conviction, "the relevant question is whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 319 (1979). When it applies the *Jackson* standard, this Court first looks to State law to determine the essential elements of the crime. *Hawes v. Pacheco*, 7 F.4th 1252, 1264 (10th Cir.

7

2021). The Court then "examine[s] whether the evidence suffices to establish each element." *Anderson-Bey v. Zavaras*, 641 F.3d 445, 448 (10th Cir. 2011).

But "*Jackson* claims face a high bar in federal habeas proceedings because they are subject to two layers of judicial deference." *Coleman v. Johnson*, 566 U.S. 650, 651 (2012).

> First, on direct appeal, "it is the responsibility of the jury—not the court—to decide what conclusions should be drawn from evidence admitted at trial. A reviewing court may set aside the jury's verdict on the ground of insufficient evidence only if no rational trier of fact could have agreed with the jury." [. . .] And second, on habeas review, "a federal court may not overturn a state court decision rejecting a sufficiency of the evidence challenge simply because the federal court disagrees with the state court. The federal court instead may do so only if the state court decision was 'objectively unreasonable.'"

*Id.* at 651 (internal citation omitted) (quoting *Cavazos v. Smith*, 565 U.S. 1, 2 (2011) (*per curiam*)).

In assessing objective reasonableness under § 2254(d)(1), this Court "ask[s] whether the OCCA correctly identified the governing legal principle from *Jackson* and reasonably applied it to the facts of [the petitioner's] case." *Hooks v. Workman*, 689 F.3d 1148, 1167 (10th Cir. 2012). Under § 2254(d)(2), "a factual finding may be unreasonable . . . only if the state court 'plainly misapprehended or misstated the record' and the 'misapprehension goes to a material factual issue that is central to the petitioner's claim.'" *Frederick v. Quick*, 79 F.4th 1090, 1104 (10th Cir. 2023) (quoting *Menzies v. Powell*, 52 F.4th 1178, 1195 (10th Cir. 2022)), *cert. denied*, 144 S. Ct. 2634 (2024). This Court "may not characterize . . . state-court factual determinations as unreasonable 'merely because [this Court] would have reached a different conclusion in the first instance.'" *Brumfield v. Cain*, 576 U.S. 305, 313-14 (2015) (alteration added) (quoting *Wood v. Allen*, 558 U.S. 290, 301 (2010)). Further, and regardless of whether this Court reviews a federal claim under § 2254(d)'s deferential standards or reviews that claim de novo (i.e., without any deference to the state court's decision), "state-court factfinding still receives the benefit of doubt under § 2254(e)(1): that is, '[a]ny state-court findings of fact that bear upon the claim are entitled to a

8

presumption of correctness rebuttable only by "clear and convincing evidence."'" *Fontenot v. Crow*, 4 F.4th 982, 1061 (10th Cir. 2021) (quoting *Hooks*, 689 F.3d at 1164), *cert. denied* 142 S. Ct. 2777 (2022).

A.      **Additional facts**

At trial, Officer Mortensen testified that he saw two objects thrown out of the passenger side window of the Blazer while he pursued Jenkins. Dkt. 7-9, at 112-13. Officer Spicer testified that he searched along the west side of the road where Officer Mortensen saw the two items thrown out the window. *Id.* at 174-82, 187-94. Officer Spicer further testified that he found two items, a loaded nine-millimeter pistol and a baggie that appeared to contain drugs, on the ground. *Id.* Officer Spicer testified there was "light moisture" on the ground and the weather was cool when he found these items, but "there was no moisture on the gun" and the gun felt warmer than the air temperature. *Id.* at 183-86. Officer Spicer also testified the gun, which he found on a sidewalk, had scuff marks on the steel slide that were consistent with the gun being "thrown against concrete." *Id.* at 186-87. The State presented evidence that the gun was loaded, with a magazine of bullets and one round in the chamber, and the baggie of drugs contained 112 pills and a smaller baggie of a white powdery substance. *Id.* at 126-35, 184-85, 218-22. Officer Spicer testified, based on his training and experience, that this quantity of pills was consistent with distribution, not personal consumption. *Id.* at 196. Officer Mortensen and Officer Spicer testified, based on their training and experience, that possession of a gun in conjunction with possession of this quantity of pills is consistent with drug distribution. *Id.* at 142, 197-98.

Jared Lieser, a forensic analyst with the Tulsa Police Department, ran chemical tests on a nine of the pills from the baggie Officer Spicer found. Dkt. 7-9, at 213-19. Lieser identified the pills as methamphetamine, testified that each pill weighed approximately .20 grams, and testified

9

that the total weight of all pills in the baggie was 21.98 grams. *Id.* at 220-21. Lieser identified the white powdery substance from the smaller baggie as cocaine and testified that the total weight of the cocaine was .14 grams. *Id.* at 221-23. James Wilcoxen, a firearms analyst with the Tulsa Police Department, tested the functionality of the gun Officer Spicer found and determined that the gun was inoperable. *Id.* at 225, 233. Wilcoxen testified the safety was broken and the trigger mechanism would not engage with the hammer. *Id.* at 233.

In accordance with state law, the trial court instructed the jury that it could not find Jenkins guilty of trafficking in illegal drugs (methamphetamine), in violation of Okla. Stat. tit. 63, §§ 2-415(B) and (C)(4)(a), unless the State proved, beyond a reasonable doubt, that Jenkins (1) knowingly; (2) distributed or possessed; (3) not less than twenty (20) grams of methamphetamine. Dkt. 7-14, at 34. The trial court further instructed the jury that state law defines "possession" as "[a]ctual physical custody, or knowledge of the substance's presence, as well as power and intent to control its use or disposition." *Id.* at 41. The trial court instructed the jury that it could not find Jenkins guilty of possessing a firearm while in commission of a felony, in violation of Okla. Stat. tit. 21, § 1287, unless the State proved, beyond a reasonable doubt, that Jenkins (1) knowingly; (2) willfully; (3) possessed; (4) a pistol; (5) while committing the crimes of (a) trafficking in illegal drugs, and/or (b) acquiring proceeds from drug activity, and/or (c) unlawfully possessing a controlled drug with intent to distribute; (6) committed one or more of the applicable underlying felonies; and (7) that possession of the weapon was connected to the commission of or attempt to commit the underlying felony. *Id.* at 46-47. Applicable to both offenses, the trial court instructed the jury that the law recognizes "two kinds of possession, actual possession and constructive possession." *Id.* at 51. As to the latter kind the trial court instructed the jury that "[a] person who, although not in actual possession, knowingly has the power and the intention at a given time to

exercise dominion or control over a thing, is then in constructive possession of it," that "mere proximity to a substance is insufficient proof of possession," and that "additional evidence of the defendant's knowledge and control" of a substance" "may be established by circumstantial evidence." *Id.*

On direct appeal, Jenkins claimed the State failed to prove his guilt as to either offense. As to the firearm conviction, Jenkins argued the State "failed to prove that—(1) [he] possessed the gun; and (2) the 9-millimeter pistol recovered in this case meets the statutory definition of 'pistol.'" Dkt. 6-3, at 4. The OCCA rejected both arguments. The OCCA explained that "possession of a firearm can be either constructive or actual" and that "[a]n individual may constructively possess a firearm where he exercises dominion or control over it." *Id.* Applying the *Jackson* standard, the OCCA reasoned that the "evidence here, when viewed in the light most favorable to the State, established beyond a reasonable doubt that [Jenkins] constructively possessed the 9-millimeter pistol that was found on the sidewalk shortly after the stop." *Id.* at 3-4. The OCCA explained that Jenkins's second argument, regarding the statutory definition of "pistol," was based on a misunderstanding of state law. *Id.* at 4. The OCCA stated,

> [Jenkins] erroneously cites 21 O.S. Supp. 2017, § 1289.3 to argue the definition of pistol only includes objects capable of discharging a projectile. [Jenkins] was convicted of Possession of a Firearm While in the Commission of a Felony in violation of 21 O.S. Supp. 2012, § 1287. Section 1287 contains a list of qualifying firearms that fall within its purview. Section 1287 broadly includes, *inter alia*, any "blank or imitation" pistols, as well as any "altered air or toy pistol, shotgun or rifle capable of raising in the mind of one threatened with such device a fear that it is a real pistol, shotgun or rifle[.]" Thus, by the statute's plain language, the State was not required to prove that the firearm [Jenkins] possessed was capable of discharging a lethal projectile.

*Id.* at 4-5. As to the drug trafficking conviction, Jenkins argued the State failed to prove the element of possession. *Id.* at 5. The OCCA disagreed, citing the concept of constructive possession, applying the *Jackson* standard, and reasoning that, "viewing the evidence in the light

most favorable to the State, any rational trier of fact could have found beyond a reasonable doubt [Jenkins] constructively possessed the illegal drugs recovered shortly after the traffic stop." *Id.* at 3, 5-6.

### B. Analysis and conclusion

Jenkins claims, as he did on direct appeal, that the State did not present sufficient evidence to support the firearm conviction because "[t]he State failed to prove that [he] possessed a gun" and Okla. Stat. tit. 21, § 1289.3 "shows that the definition of a pistol only includes objects capable of discharging a projectile." Dkt. 1, at 5; Dkt. 6-1, at 11-18; Dkt. 11. He further claims that the State did not present sufficient evidence to support the drug trafficking conviction because he "did not actually or constructively possess any drugs," "no drugs were found in the vehicle," and it was unreasonable for the jury to infer that the baggie of drugs found on the ground by Officer Spicer was one of the items that Officer Mortensen saw Jenkins throw out the window of the Blazer. *Id.* at 7; Dkt. 6-1, at 19-24; Dkt. 11.

Respondent contends that § 2254(d) bars relief as to these two Fourteenth Amendment claims because the OCCA reasonably applied *Jackson* to the facts of this case and reasonably determined the facts based on the evidence presented at trial. Dkt. 6, at 15-28.

In his Reply, Jenkins contends the OCCA's decision rejecting these claims is contrary to clearly established federal law, based on an unreasonable application of *Jackson*, and based on an unreasonable determination of the facts presented in state court, under § 2254(d)(1) and (d)(2), because the OCCA (1) did not consider "important evidence"; (2) "wholly failed to reference any testimony or evidence that [he] actually or constructively possessed a firearm"; (3) did not consider discrepancies between where Officer Mortensen said he saw two items thrown out the window and where Officer Spicer testified he found those items; (4) overlooked that the State did not

establish a "connection or nexus between [Jenkins] and the firearm"; and (5) should have concluded that "it was unreasonable for the jury to convict [him] of possessing a firearm and drugs because the State never presented any evidence directly linking [him] to the items that were found on a sidewalk." Dkt. 11, at 1-5.

For three reasons, the Court agrees with Respondent that § 2254(d) bars relief as to claims one and two. First, because the OCCA identified *Jackson* as the clearly established federal law governing Jenkins's sufficiency-of-the-evidence claims, Jenkins has not shown that the OCCA's rejection of those claims is contrary to clearly established federal law under § 2254(d)(1). *See Matthews v. Workman*, 577 F.3d 1175, 1183 (10th Cir. 2009) ("Because the OCCA applied the *Jackson* standard in deciding [the petitioner's] sufficiency claim on direct review, our task is limited by AEDPA to inquiring whether the OCCA's application of *Jackson* was unreasonable." (footnote omitted)).

Second, as Respondent contends, Jenkins has not shown that the OCCA applied *Jackson* to the facts of the case in an objectively unreasonable manner, or that the OCCA rested its decision on an objectively unreasonable determination of the facts presented in state court. Applying the *Jackson* standard, the OCCA determined that a rational jury could have found, beyond a reasonable doubt, that Jenkins constructively possessed the gun and the baggie of drugs that Officer Spicer found on the side of the same street that, just minutes before, Officer Mortensen briefly pursued Jenkins's vehicle and saw Jenkins throw two items out of the passenger side window. The evidence presented at trial supports the objective reasonableness of the OCCA's conclusion. The jury heard evidence that Officer Mortensen saw two items thrown out of the passenger window of Jenkins's vehicle as Officer Mortensen pursued Jenkins for a few blocks on North Garrison Place and that Jenkins was the only occupant of the vehicle. The jury also heard evidence that Officer

13

Spicer walked along North Garrison Place and found two items: (1) a loaded pistol that appeared to be scuffed, as if may have been thrown on the concrete sidewalk, and that appeared to be dry and warm despite a cool outside temperature and moisture on the sidewalk; and (2) a plastic baggie containing more than one hundred methamphetamine pills and a smaller baggie of cocaine. On this evidence it was objectively reasonable for the OCCA to conclude, viewing the evidence in the light most favorable to the State, that a rational juror could have found Jenkins guilty, beyond a reasonable doubt, of constructively possessing the gun and the baggie of drugs. Thus, as Respondent contends, § 2254(d)(1)'s unreasonable application prong bars relief.

Third, none of Jenkins's arguments compel a conclusion that he has satisfied the preconditions to relief in § 2254(d). To the extent Jenkins reasserts his argument that the State had to prove that the gun found on the sidewalk had to be operable, the OCCA rejected that argument based on its interpretation that Okla. Stat. tit. 21, § 1287 does not require a showing that the defendant possessed a firearm capable of discharging a lethal projectile. Dkt. 6-3, at 4-5. On habeas review, this Court is bound by the OCCA's interpretation of state law and by its determination that operability of the firearm is not an essential element of possessing a firearm while in commission of a felony. *Hawes*, 7 F.4th at 1264, 1266; *Anderson-Bey*, 641 F.3d at 448. This argument therefore cannot satisfy § 2254(d)'s standards. Jenkins's arguments that the OCCA either failed to consider or failed to explicitly discuss "important evidence" likewise does not satisfy those standards. *Jackson* requires a reviewing court to determine "whether, after viewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson*, 443 U.S. at 319. It does not, however, require a reviewing court to include in its opinion any detailed analysis of the evidence presented at trial. In its decision, the OCCA identified the *Jackson* standard as the

federal law relevant to Jenkins's claim and stated that it thoroughly considered the entire record and the parties' briefs in applying that standard. Dkt. 6-3. That the OCCA did not also discuss, within its decision, each piece of evidence that supported its rejection of the *Jackson* claims does not come close to showing that the OCCA's decision is unreasonable, either as a matter of law or a matter of fact. Lastly, Jenkins's remaining arguments—regarding the lack of direct evidence that he possessed the gun and drugs and the reasonableness of the jury's assessment of the circumstantial evidence presented at trial—effectively ask this Court to ignore the double deference that applies to a *Jackson* claim on habeas review and to ignore that juries can rely on circumstantial evidence to reach a verdict. *Johnson*, 566 U.S. at 651; *see United States v. Hill*, 786 F.3d 1254, 1261 (10th Cir. 2015) (explaining that the government may rely on circumstantial evidence to meet its burden to prove guilt beyond a reasonable doubt and stating that "[c]ircumstantial evidence alone may permissibly support a jury's guilty verdict"). Giving due deference to the jury's responsibility to resolve conflicts in the evidence and "decide what conclusions should be drawn from evidence admitted at trial," including circumstantial evidence, and due deference to the OCCA's responsibility to apply the *Jackson* standard in the first instance, the Court finds that the OCCA's rejection of the *Jackson* claims is objectively reasonable, as a matter of law and a matter of fact.

Based on the foregoing, the Court denies the Petition as to claims one and two.

**II.     Claim three: Indian country jurisdiction**

Jenkins claims the trial "court lacked jurisdiction over [him] because his crime occurred in Indian Territory (Cherokee)." Dkt. 1, at 8. In support of this claim, Jenkins alleges his "crime was committed within the bounds of the Cherokee Nation Treaty of 1866, art. 13." *Id.* As previously discussed, the OCCA rejected this claim because Jenkins presented no evidence in state

court to establish that either he or any victim is Indian.  Dkts. 6-8, 6-10.

For three reasons, Jenkins has not shown that habeas relief is warranted as to this claim.  First, he presents no clear and convincing evidence to contradict the state courts' factual findings that neither he nor any victim is Indian for purposes of federal law.  Dkts. 1, 11, generally; *see* 28 U.S.C. § 2254(e)(1) (providing that a habeas court must presume the correctness of a state court's factual finding absent clear and convincing evidence to rebut that finding); *Fontenot*, 4 F.4th at 1061.  Second, even if the presumption of correctness did not apply, it was undeniably reasonable for the state courts to find that neither Jenkins nor any victim is Indian because the only evidence presented in state court was Jenkins's own admission, in his affidavit, that he is not Indian for purposes of federal law.  Dkt. 6-6, at 4.  Thus, § 2254(d)(2) bars relief because Jenkins has not shown that the OCCA's rejection of his Indian country jurisdiction claim is based on an unreasonable determination of the facts presented in state court.  Third, because Jenkins admits he is not Indian and has not alleged or established that his crimes involved an Indian victim, he has not shown that the OCCA's decision either is contrary to, or is based on an unreasonable application of, clearly established federal law, as required to overcome § 2254(d)(1).  When the OCCA rejected Jenkins's claim, clearly established federal law provided that the State had jurisdiction to prosecute crimes committed within Indian country if those crimes were committed by a non-Indian against a non-Indian.  *See Oklahoma v. Castro-Huerta*, 597 U.S. 629, 637 (2022) ("In the leading case in the criminal context—the *McBratney* case from 1882—this Court held that States have jurisdiction to prosecute crimes committed by non-Indians against non-Indians in Indian country." (citing *United States v. McBratney*, 104 U.S. 621, 623-24 (1882)); *McGirt*, 591 U.S. at 933 (citing *McBratney* for the proposition that unless otherwise provided in 18 U.S.C. §§ 1152 and 1153, "States are . . . free to apply their criminal laws in cases of non-Indian victims and

16

defendants, including within Indian country"). For these reasons, the Court denies the Petition as to claim three.

## *CONCLUSION*

The Court finds and concludes that Jenkins has not made the necessary showings to obtain federal habeas relief under 28 U.S.C. § 2254. The Court therefore denies the Petition as to all three claims raised therein. The Court further concludes that no certificate of appealability shall issue because reasonable jurists would not debate the correctness of this Court's assessment of Jenkins's constitutional claims. 28 U.S.C. § 2253(c); *Slack v. McDaniel*, 529 U.S. 473, 484 (2000).

**IT IS THEREFORE ORDERED** that the Petition (Dkt. 1) is **denied**; a certificate of appealability is **denied**; and a separate judgment shall be entered in this matter.

**IT IS FURTHER ORDERED** that the Clerk of Court shall note on the record the substitution of Carrie Bridges, Warden, in place of Scott Nunn as party respondent.

**DATED** this 5th day of December, 2024.

GREGORY K. FRIZZELL
UNITED STATES DISTRICT JUDGE